■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v GUSTAVO ALOZO, Respondent.—Order of the Supreme Court, New York County (Howard E. Bell, J.), rendered on June 5, 1990, which granted defendant's motion to suppress physical evidence, is unanimously reversed on the law, the motion denied, the indictment reinstated and the matter remanded for further proceedings.

In the early morning of January 25, 1990, undercover Police Officer Martin Gallo and two other officers were on patrol in an unmarked car when they observed defendant and an unidentified man walking toward a parked jeep on the corner of Ninth Avenue and West 51st Street in Manhattan. From across the street, Officer Gallo noticed defendant and his companion looking up and down the street both before and

after they reached the vehicle. Defendant opened the passenger door and removed a dark metallic object from underneath the front seat, which he quickly placed in the waistband of his pants at the small of his back. The two men then headed toward Tenth Avenue. Officer Gallo, believing that defendant was carrying a gun, alerted the other officers. With their hands on their weapons, the officers approached defendant and identified themselves. Officer Gallo asked defendant what he had "tucked" into his pants. After defendant failed to respond, Officer Gallo put his hand in the small of defendant's back and felt the butt of a gun. A loaded .38 caliber revolver was retrieved from the waistband of defendant's pants, and he was arrested. Later, three bags of cocaine were discovered in the back seat of the police vehicle.

At the subsequent suppression hearing, defendant claimed that he had left a bar on 51st Street with a friend and walked to his jeep where he opened the door, took a beeper from under the seat and placed it in the front of his pants. The police, having seen him, came over and inquired into what he was doing. They proceeded to search him and found two beepers in the front of his pants. One of the officers, remarking that "we got a big fish here", grabbed him and searched the back of his pants, locating a gun. The officers thereupon disposed of the beepers. Defendant denied putting three plastic bags of cocaine in the back of the unmarked car.

The Supreme Court, in granting defendant's motion to suppress the gun and cocaine, stated that it credited "most" of the testimony of the witnesses and that any inconsistencies were not legally significant. In that connection, the court found that Officer Gallo had observed defendant repeatedly looking up and down 51st Street, as well as removing a dark metallic object from under the front seat of a jeep, which he placed in the waistband of his pants. Although commenting that Officer Gallo's training caused him to be aware of the fact that weapons are often concealed in the small of the back, the court nevertheless concluded that he had impermissibly conducted a pat down search based upon nothing more than a hunch. According to the court, the question was not what the object was but whether Officer Gallo knew it to be a gun, and, in that respect, the facts demonstrated his uncertainty. Indeed, the court ruled that there was no predicate for the police even to stop defendant since there was no radio run, no report of criminal activity and no visible bulge. The court, however, was in error and should have denied the motion to suppress.

Officer Gallo's testimony, which was accepted by the court, established that Officer Gallo observed defendant retrieve a dark metallic object from under the front seat of the jeep and put it in the waistband of his pants in the small of his back beneath his leather jacket. The officer believed the item to be a gun because of its appearance, the manner in which defendant held it and the fact that it was inserted in the back waistband of his pants. As the Court of Appeals stated in *People v Benjamin* (51 NY2d 267, 271), "[i]t is quite apparent to an experienced police officer, and indeed it may almost be considered common knowledge, that a handgun is often carried in the waistband." The officer's suspicions were further aroused by defendant's action in glancing up and down the block both before and after retrieving the object and his adjusting his jacket as he left the jeep. When Officer Gallo asked defendant what he had tucked into his pants, and defendant did not respond, the officer was certainly justified, under the totality of the circumstances herein, in suspecting that defendant was armed and in frisking him *(see, People v Klass,* 55 NY2d 821; *People v Oppedisano,* 176 AD2d 667; *People v Tsang,* 173 AD2d 173, *lv denied* 78 NY2d 1082).

Contrary to the view of the Supreme Court, an " ' "officer need not be absolutely certain that the individual is armed" ' " before he may frisk him *(People v Stone,* 86 AD2d 347, 349, *affd* 57 NY2d 762, *cert denied* 459 US 1212; *Terry v Ohio,* 392 US 1, 27). So long as there was, as herein, "a reasonable basis for the police officer's belief that the defendant had a gun in his possession" *(People v Prochilo,* 41 NY2d 759, 761), the police conduct in touching defendant's back was warranted, particularly since the degree of intrusiveness involved was minimal *(see, People v Robinson,* 125 AD2d 259, *appeal dismissed* 69 NY2d 1014). The Supreme Court's conclusion that Officer Gallo's frisk of defendant was founded upon nothing more than a hunch simply ignored the officer's personal observations and is not supported by the record. Consequently, the motion to suppress should have been denied. Concur—Milonas, J. P., Wallach, Ross, Asch and Smith, JJ.