■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD BAILEY, Also Known as DONAL BAILEY, Appellant. [687 NYS2d 738] —Carpinello, J. Appeal from a judgment of the County Court of Rensselaer County (McGrath, J.), rendered March 22, 1995, upon a verdict convicting defendant of the crimes of robbery in the second degree, robbery in the third degree and assault in the third degree.

At 4:00 P.M. on the afternoon of November 29, 1993, defendant entered a record store in the City of Troy, Rensselaer County, armed with a knife. After restraining the store clerk, he took money from the cash register. He then ordered the clerk to the back of the store in a quest for more money at which time a struggle between the two ensued. Following a struggle in which the clerk was cut, defendant fled and the clerk called the police. Defendant was apprehended a few minutes later two blocks away. Following a jury trial, he was convicted of robbery in the second degree, robbery in the third degree and assault in the third degree. Sentenced as a persistent felony offender to a prison term of 15 years to life on each robbery conviction and a one-year jail term on the assault conviction, all to run concurrently, defendant appeals.

There should be an affirmance. First, County Court properly rejected defendant's contention that his detention on the street minutes after the holdup was unlawful and that evidence obtained as a result thereof should have been suppressed. It was developed at the suppression hearing that City of Troy Police Officer Robert Quinlan was on patrol at 4:00 P.M. on the afternoon of November 29, 1993 when he received a radio transmission that there had just been an armed holdup at a

nearby record store. Matching the sex, race, height and weight of the suspect, defendant was observed by Quinlan within minutes of the occurrence a short distance from the scene. There was no one else in the area.

When Quinlan approached defendant and asked his name and recent whereabouts, defendant responded only with a name. At this time, Quinlan observed a fellow police officer approaching defendant from behind in a hurried manner. His suspicions aroused, Quinlan asked defendant to place his hands on the roof of the patrol car, with which defendant complied. A pat down search produced a wad of crumpled money and revealed a cut on defendant's wrist. When asked about the cut, defendant made an oral admission. The totality of these circumstances provided reasonable suspicion that defendant had committed a crime and thus Quinlan was justified in stopping him (*see, People v Hollman*, 79 NY2d 181, 185; *People v De Bour*, 40 NY2d 210; *People v Buchta*, 182 AD2d 853, *lv denied* 80 NY2d 829; *cf., People v Brown*, 215 AD2d 333). Moreover, as Quinlan was aware that the perpetrator had been armed during the commission of the crime and because defendant did not respond to the question of his recent whereabouts, Quinlan was also justified in conducting a frisk of him for safety purposes (*see, People v Salaman*, 71 NY2d 869; *People v Breaziel*, 246 AD2d 310, *lv denied* 91 NY2d 940; *People v Adams*, 217 AD2d 634, *lv denied* 87 NY2d 897; *People v Jackson*, 205 AD2d 640, *lv denied* 84 NY2d 827).

We also find no merit to defendant's assertion that the identification testimony of a parking lot attendant on duty near the scene of the crime should have been precluded because the People failed to provide him notice of same as required by CPL 710.30. After defendant had been arrested, the parking lot attendant approached police and informed them that he had just seen defendant changing his clothes in a nearby park; the police told the attendant "to go back to [his] booth". Under these circumstances, we conclude, as did County Court, that a CPL 710.30 notice was not necessary because the out-of-court identification was not the result of a "police arranged" procedure; rather, it was the result of mere happenstance (*see, People v Dixon*, 85 NY2d 218; *People v Bello*, 219 AD2d 657). The identification was spontaneous and unsolicited and by no means an identification procedure undertaken at the "deliberate direction of the State" (*People v Newball*, 76 NY2d 587, 591; *cf., People v Dixon, supra*).

Defendant finally maintains that there was insufficient proof to establish that the clerk sustained physical injury, an ele-

ment of robbery in the second degree pursuant to Penal Law § 160.10 (2) (a). There was testimony that, during the struggle with defendant in the course of the robbery, the clerk sustained bruises, scratches and a cut inside his mouth. This latter injury required stitches, antibiotics and a prescription pain reliever and prevented the clerk from eating solid foods. The clerk described his injuries as painful and testified that the pain lasted a few weeks. Viewing this evidence in the light most favorable to the People (*see, People v Jacobs*, 188 AD2d 897, *lvs denied* 81 NY2d 887, 890), we are satisfied that it was sufficient to establish that the clerk did sustain physical injury within the meaning of Penal Law § 10.00 (9) (*see, People v Greene*, 70 NY2d 860; *People v Dailey*, 222 AD2d 278, *lv denied* 87 NY2d 971; *People v Malave*, 158 AD2d 435, *lv denied* 75 NY2d 967; *cf., People v Dorsey*, 112 AD2d 536, *lv denied* 66 NY2d 763).

Cardona, P. J., Mercure, Peters and Spain, JJ., concur. Ordered that the judgment is affirmed.